Filed 8/16/22  In re D.S. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re D.S., a Person Coming Under the Juvenile Court Law. | B315828 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP01988A) |
| Plaintiff and Respondent, | |
| v. | |
| JASMINE F., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gabriela H. Shapiro, Judge Pro Tempore. Conditionally affirmed and remanded with directions.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

————————————

Mother appeals from orders denying her petition to change a court order and terminating her parental rights. On appeal, she contends the trial court erred in finding the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) did not apply. Mother argues the Los Angeles County Department of Children and Family Services (Department) failed to conduct a proper inquiry of her and maternal relatives to determine whether D.S. is or may be an Indian child. The Department concedes that it did not conduct a proper ICWA inquiry and does not oppose a conditional affirmance and remand for compliance with ICWA. We accept the Department's concession and remand this matter for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In light of the limited issue raised on appeal, we provide only a brief summary of the background of this case. Mother tested positive for marijuana and methamphetamine when D.S. was born in April 2020. The Department detained D.S. two days later. On July 6, 2020, the juvenile court sustained a petition pursuant to Welfare and Institutions Code section 300, subdivision (b),[1] based on the parents' substance abuse, mother's mental and emotional problems, and father's mental health diagnosis. The court asserted dependency jurisdiction over then three-month-old D.S., removed her from both parents, ordered

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

her suitably placed, and ordered the Department to provide reunification services to both parents.

Father's reunification services were terminated at the six-month review hearing.[2] A report for the twelve-month review hearing indicated mother had enrolled in four different substance abuse programs since the case was opened. Although she had recently completed a two-month inpatient program, she failed to attend an appointment to begin outpatient services. Mother had not submitted drug tests during the relevant review period and did not provide the social worker with information to confirm her participation in mental health services. After completing the inpatient drug program in late April 2021, mother had not made herself available to the Department to schedule in-person visits with D.S., and she missed all scheduled virtual visits. At the June 8, 2021 hearing, the juvenile court terminated mother's reunification services. The court set a hearing to select a permanent plan, pursuant to section 366.26 (.26 hearing), for October 20, 2021.

The report for the .26 hearing indicated mother had consistent, monitored visits with D.S. Mother's interactions with D.S. were appropriate when both she and D.S. were awake. However, mother had fallen asleep several times during the visits when D.S. was napping. The visitation monitor noted mother had almost rolled on top of D.S. while napping with her. Mother's virtual visits were inconsistent, and she had at times appeared to be under the influence.

On October 6, 2021, mother submitted a request to change a court order pursuant to section 388, seeking six additional

---

[2] Father is not a party to this appeal.

months of reunification services. Mother declared she had enrolled in another substance abuse program as of mid-July 2021; she had changed her way of thinking about substance abuse and how she coped with her addiction; and she was visiting D.S. regularly. The juvenile court denied the petition without a hearing. On October 20, 2021, the juvenile court terminated parental rights, rejecting mother's argument that the beneficial parent-child relationship exception to adoption applied.[3] Mother timely appealed.

*ICWA background*

The initial dependency petition indicated the social worker questioned both parents about Indian ancestry. Based on that questioning, the Indian Child Inquiry Attachment to the petition reported D.S. had no known Indian ancestry. However, the April 13, 2020 detention report indicated mother told the social worker she has Cherokee Indian ancestry. Mother did not know if her family is registered with the tribe. The social worker interviewed a maternal "great great aunt," Josephine F., but the report did not indicate that the interview included questions regarding any ICWA-related issues. According to the report, Josephine F. adopted mother and the maternal uncle because of the maternal grandmother's substance abuse problems. Josephine F. informed the Department that the maternal grandmother is deceased. Father "reported the [ICWA] does not apply."

At the April 13, 2020 detention hearing, both parents submitted parental notification of Indian status (ICWA-020) forms, each declaring under penalty of perjury that they had no

---

[3] Mother offered no evidence at the .26 hearing.

4

Indian ancestry as far as they knew.  The court found it had no reason to know that ICWA applied to the case.  The minute order stated the parents were to keep "the Department, their Attorney and the Court aware of any new information relating to possible ICWA status."  The record does not reflect that the Department or the court conducted any further ICWA-related inquiry or investigation.

## DISCUSSION

On appeal, mother raises only a single issue:  she contends the Department and the court failed to make a proper inquiry as to whether D.S. is or may be an Indian child.[4]  The Department concedes that it failed to conduct a proper inquiry.

Section 224.2 sets forth the duties of a county welfare department and the juvenile court in determining whether a child is or may be an Indian child.  An " 'Indian child' " is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an

---

[4] Mother's appointed appellate counsel filed an opening brief raising ICWA error and asking this court to reverse the order terminating parental rights.  However, the opening brief also sought leave to allow mother to personally file a brief, citing *In re Phoenix H.* (2009) 47 Cal.4th 835.  We note the discretionary procedure described in *In re Phoenix H.* typically applies only when appellate counsel is unable to identify any arguable issues to present on appeal, which is not the case here. (*Id.* at p. 844 [when appointed counsel files brief concluding no arguable issues, court may allow parent to personally file brief].) Nonetheless, this court granted mother leave to file a supplemental letter brief.  We have reviewed mother's letter and conclude it does not raise any arguable issues.  The Department's motion to dismiss as to that portion of the appeal is granted.

Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a).)

Section 224.2, subdivision (a), provides that both the court and the Department have an "affirmative and continuing duty" to inquire whether a child is or may be an Indian child, beginning with the "initial contact," which includes asking the party reporting abuse or neglect if they have any information that the child may be an Indian child. Under section 224.2, subdivision (b), if a child is placed in the Department's temporary custody, the agency must inquire whether the child is or may be an Indian child, by asking a nonexclusive group that includes the child, the parents, and extended family members. Under section 224.2, subdivision (c), at the first court appearance of each party, the juvenile court must ask whether the appearing party knows or has reason to know that the child is an Indian child. In addition, the court must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.

There is "reason to know" a child is an Indian child when: a person having an interest in the child informs the court the child is an Indian child; the residence of the child, the child's parents, or the child's Indian custodian, is on a reservation or in an Alaskan Native village; a participant in the proceeding, officer of the court, Indian tribe or organization, or agency informs the court it has discovered information indicating the child is an Indian child; the child gives the court reason to know that the child is an Indian child; the court is informed that the child is or has been a ward of tribal court; or the court is informed either the parent or the child possesses an identification card indicating membership or citizenship in an Indian tribe. (§ 224.2, subd. (d).)

6

Under section 224.2, subdivision (e), if the court or social worker has reason to believe an Indian child is involved in the proceeding, but does not have enough information to determine there is a reason to know the child is an Indian child, the court or the social worker must make further inquiry, as soon as practicable. "[R]eason to believe" means the court or social worker has information "suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) "Further inquiry" includes actions such as "[i]nterviewing the parents, Indian custodian, and extended family members" to gather information that would be necessary to provide notice to any relevant tribes. (§§ 224.2, subd. (e)(2)(A), 224.3, subd. (a)(5).) It also includes contacting the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying contact information of relevant tribes, and contacting the "tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(B)-(C).)

Section 224.2, subdivision (i)(2), provides that if "the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."

In this case, mother contends the Department failed in its duty of inquiry by not asking mother's relatives whether D.S. is or may be an Indian child as required under section 224.2, subdivision (b). Mother additionally argues that her statement

7

that she had Cherokee Indian ancestry provided "reason to believe" D.S. is an Indian child, and the Department thus failed to conduct the mandatory further inquiry; it did not interview any relatives, attempt contact with any Cherokee tribe, or contact the Bureau of Indian Affairs, as required under section 224.2, subdivision (e)(2). The Department concedes it did not conduct a proper inquiry, and further concedes that it is appropriate for this court to remand this matter for compliance with ICWA.

It is undisputed that the Department did not interview available maternal relatives about ICWA despite interviewing them about other case-related issues. It is also undisputed that mother told the Department her family had Cherokee Indian ancestry, but no additional inquiries were made to investigate that statement. Further, there was evidence that mother was raised by her extended relative due to the maternal grandmother's substance abuse. On this record we find it appropriate to accept the Department's concession. (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779 [failure to conduct proper initial inquiry may be prejudicial if agency did not follow up on report of possible Indian heritage or where parent's self-reporting may not be fully informed]; *In re A.C.* (2022) 75 Cal.App.5th 1009, 1015–1016 [conditional affirmance where mother denied Indian ancestry, but report suggested without explanation that ICWA may apply, and mother had been raised in foster care].)

We therefore conditionally affirm the juvenile court order, remanding the matter for further inquiry and compliance with ICWA.

## DISPOSITION

The juvenile court's order terminating parental rights is conditionally affirmed. The case is remanded to the juvenile

8

court to order the Department to immediately comply with the inquiry provisions of Welfare and Institutions Code section 224.2 as to available maternal relatives. After ensuring the Department has complied with the inquiry, and, if applicable, notice provisions of ICWA and related California law, the juvenile court shall determine whether ICWA applies. If the court determines ICWA does not apply, the order terminating parental rights shall remain in effect. If the court determines ICWA does apply, it shall vacate its order terminating parental rights and proceed consistent with ICWA and related state law.

NOT TO BE PUBLISHED.


ADAMS, J.*

We concur:


EDMON, P. J.


LAVIN, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.